UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CAROLYN STRICKLAND, as the personal representative of the estate of her son, Cody Strickland,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE AUTHORITY OF CULLMAN COUNTY, et al.,<br><br>Defendants. | Civil Action Number<br>**5:18-cv-01697-AKK** |

## MEMORANDUM OPINION AND ORDER

This action arises out of the tragic death of Carolyn Strickland's son, Cody Strickland. According to Ms. Strickland, Cody died because the defendants denied him his right to basic medical care while he was incarcerated at the Cullman County Jail. She asserts claims under 42 U.S.C. § 1983 against Dr. Adam Harrison, the jail's medical director; Harrison Medical Consulting, LLC ("HMC"), the jail's medical provider; Mike Hale, a nurse employed by HMC who treated her son at the jail; the Health Care Authority of Cullman County ("HCACC"); Cullman Regional Medical Center ("CRMC"); and several officers at the jail, alleging deliberate indifference to her son's serious medical needs in violation of the Eighth Amendment. Doc. 29. Ms. Strickland also asserts state law medical malpractice claims against Hale, Dr.

Harrison, HMC, HCACC, and CRMC based on her allegations that they failed to meet the relevant standard of care regarding her son's treatment. *Id.*

This case is currently before the court on Hale's, Dr. Harrison's, and HMC's motions to dismiss, docs. 34; 47, and motion to stay discovery, doc. 52. In their motions to dismiss, the movants argue that Ms. Strickland failed to state a plausible claim for deliberate indifference and that her complaint is an impermissible shotgun pleading. The motions, which are fully briefed and ripe for review, *see* docs. 34; 37; 38; 47; 49; 50, are due to be granted solely as to the § 1983 claims against Dr. Harrison and HMC and the medical malpractice claim against Dr. Harrison.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id. See also Twombly*, 550 U.S. at 555.

## II. RELEVANT FACTUAL BACKGROUND

Mr. Strickland was a work release inmate housed in the Cullman County Jail when he became ill. Doc. 29 at 3. On February 24, 2017, Mr. Strickland "requested to go to medical," where Hale treated him. *Id.* at 4. By the next afternoon, Mr. Strickland's condition had severely deteriorated, and Betty Johnson, a jailer, took him to see Hale again. *Id.* At that time, Mr. Strickland "was pale, lethargic, barely responsive, and having difficulty breathing," and he "reported being nauseous, recent vomiting, coughing up blood, diarrhea, and chest pain." *Id.* Johnson "made

3

sure Hale understood all of [Mr. Strickland's] severe symptoms despite [Mr. Strickland's] limited ability to fully communicate them." *Id.* Allegedly, Hale observed that Mr. Strickland had a fever, rapid breathing, an elevated heart rate, and an oxygen saturation level of 93.[1] *Id.* According to Ms. Strickland, her son's symptoms "clearly indicated sepsis," and the standard of care required evaluation and treatment in a hospital, or, at a minimum, contacting Dr. Harrison, Hale's supervisor, for guidance. *Id.* And, Ms. Strickland alleges that Hale and Johnson recognized that her son needed to go to the hospital. *Id.* at 5. Despite the severe symptoms, Hale sent Mr. Strickland "back to his housing in work release," and did not contact Dr. Harrison or take any other action to obtain medical care. *Id.*

Mr. Strickland's condition deteriorated further. *Id.* at 6-7 Other inmates informed jail staff that Mr. Strickland "needed to go to the hospital due to severe nausea and vomiting, severe difficulty breathing, general weakness and non-responsiveness, and other symptoms." *Id.* at 7. But, the overnight jail staff did not check on Mr. Strickland, or call Hale or Dr. Harrison. *Id.*

Johnson took Mr. Strickland to see Hale again the following morning before 8:00 a.m. *Id.* At that time, Mr. Strickland "was in se[ver]e respiratory distress and was cyanotic with low blood pressure, rapid breathing, and high pulse," which Hale and Johnson recognized "as a life-threatening medical emergency." *Id.* at 7-8.

---

[1] Hale contends that Mr. Strickland's oxygen saturation level was actually 98. Doc. 34 at 8.

4

Rather than calling for emergency help, however, Hale called Dr. Harrison, who authorized Hale to send Mr. Strickland to the hospital. *Id.* at 8. Hale then "merely instructed sheriff personnel to arrange for [Mr. Strickland] to be driven to the hospital," and he did not tell them that Mr. Strickland's condition was an emergency, which delayed medical treatment by fifteen to thirty minutes. *Id.* In addition, Hale allegedly did not "provide sheriff personnel with necessary information regarding [Mr. Strickland's] condition," resulting in further delays in treatment at the hospital. *Id.* Tragically, Mr. Strickland died that morning at the hospital. *Id.*

## III. ANALYSIS

Hale, Dr. Harrison, and HMC have moved to dismiss, arguing that Ms. Strickland fails to plead a plausible deliberate indifference against them or a plausible medical malpractice claim against Dr. Harrison, and that the Third Amended Complaint is an impermissible shotgun pleading. Docs. 34 and 47.[2] The court addresses these contentions in turn.

### A. **Whether Ms. Strickland Pleads a Plausible Deliberate Indifference Claims Against the Moving Defendants**

Ms. Strickland asserts § 1983 claims against Hale, Dr. Harrison, and HMC for deliberate indifference to her son's medical needs. Doc. 29 at 9. "Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth

---

[2] Hale and HMC do not challenge the sufficiency of the medical malpractice claims against them. *See* docs. 34; 38 at 2; 47.

5

Amendment." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). But, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Accordingly, allegations of negligence in diagnosing or treating a prisoner's medical condition are not sufficient to state a claim for deliberate indifference. *Id.* Rather, to properly state a claim, a plaintiff must allege facts showing (1) "an objectively serious medical need" and (2) that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations omitted). Only the second element is in contention. *See* docs. 34 at 7; 47 at 6.

To show deliberate indifference to a serious medical need, a plaintiff must allege facts showing a defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001)). A defendant's subjective knowledge of the risk of serious harm may be inferred from circumstantial evidence, and "'from the very fact that the risk was obvious.'" *Goebert*, 510 F.3d at 1327 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). A plaintiff may show that a defendant acted with more than gross negligence based on unnecessary and unjustifiable delays in treatment. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d

6

1227, 1235 (11th Cir. 2010); *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995); *Loadholt v. Moore*, 844 F. Supp. 2d 1274, 1280 (M.D. Ga. 2012) (citing *Adams*, 61 F.3d at 1544). When a plaintiff bases her deliberate indifference claim on a delay in treatment, to determine if a plaintiff has pleaded the requisite gross negligence, this court must consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert*, 510 F.3d at 1327 (citation omitted).

1. Deliberate Indifference Claim Against Hale

Hale argues that the Complaint does not plausibly allege that he had a subjective knowledge of the risk presented by Mr. Strickland's symptoms and consciously disregarded that risk, or that he acted with more than gross negligence. Doc. 34 at 8-14. Hale overlooks, however, that Ms. Strickland alleges that her son exhibited specific severe symptoms that indicated sepsis when Hale examined him, and that, based on Mr. Strickland's vital signs and symptoms, the standard of care required evaluation in a hospital, or, at a minimum, required Hale to consult Dr. Harrison. Doc. 29 at 4. In addition, Ms. Strickland alleges that a layperson would have recognized that her son should be sent to a hospital based on his symptoms, and that even the jailer, Johnson, believed her son "obviously needed to go to the hospital." *Id.* at 4-5. Ms. Strickland further alleges that Hale did not call Dr. Harrison, send her son to a hospital, or take any other action to obtain medical care

7

for her son, opting instead to send her son back to his jail cell. *Id.* at 5-6. Accepting these allegations as true, as the court must at this juncture, Ms. Strickland has pleaded the existence of an obvious risk, that Hale had subjective knowledge of the risk presented by delaying Mr. Strickland's treatment at a hospital, and that Hale disregarded that risk.

Hale argues next that the deliberate indifference claim fails because his failure to promptly send Mr. Strickland to the hospital is tantamount to an error in judgment rather than an act of gross negligence. Doc. 34 at 10-14. But, the Eleventh Circuit recognizes that "'[d]eliberate indifference' can include 'the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.'" *Harper*, 592 F.3d at 1235 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000)). And, whether a delay in treatment constitutes deliberate indifference "'depends on the nature of the medical need and the reason for the delay.'" *Farrow*, 320 F.3d at 1247 (quoting *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) and *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). The allegations here, which the court must accept as true at this juncture, support a showing of deliberate indifference.

Relevant here, Ms. Strickland alleges that Hale did not send her son to a hospital for treatment, or even contact Dr. Harrison, even though Mr. Strickland's

8

symptoms and condition indicated that he required evaluation and treatment in a hospital during the first afternoon visit in question. *See* doc. 29 at 4-5; p. 8, *supra*. Then, on the following morning, Mr. Strickland's condition had deteriorated, and Hale allegedly should have recognized his condition as a life-threatening emergency, but Hale did not call for emergency help. Doc. 29 at 8. Instead, Hale called Dr. Harrison and then instructed jail personnel to arrange to transport Mr. Strickland to the hospital, allegedly without informing them of the time-sensitive emergency nature of Mr. Strickland's condition. *Id.* And, Hale did not provide jail personnel with necessary information regarding Mr. Strickland's condition, which purportedly further delayed treatment at the hospital. *Id.* According to Ms. Strickland, this delay could have been the difference between life and death for her son, and Mr. Strickland may have lived if he received timely medical help. *Id.* Accepted as true, these allegations support a finding that Hale acted with more than gross negligence by delaying necessary medical treatment without justification. Thus, Ms. Strickland has pleaded a plausible § 1983 claim against Hale for deliberate indifference to her son's serious medical needs in violation of the Eighth Amendment

      2.      <u>Deliberate Indifference Claims Against Dr. Harrison and HMC</u>

Dr. Harrison and HMC argue that the deliberate indifference claims against them do not allege a valid basis to hold them liable under § 1983. Doc. 47 at 5. Based on the allegations in the complaint, Dr. Harrison did not have contact with

9

Mr. Strickland, and the deliberate indifference claims against him and HMC are based on their status as Hale's supervisor and employer and on Hale's alleged actions and inactions. Doc. 29 at 9. *See also* doc. 49 at 10, n.1. But, there is no vicarious liability, including *respondeat superior* liability, in § 1983 actions. *Goebert*, 510 F.3d at 1331 (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."[3] *Cottone*, 326 F.3d at 1360 (11th Cir. 2003) (citations omitted). And, for a municipal or county employer to be liable under § 1983, a plaintiff must show that the employer violated her rights through "(1) an action taken or policy made by an official responsible for making final policy in that area of the [employer's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

---

[3] A causal connection requires: "[1] a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[;] . . . [2] a supervisor's custom or policy results in deliberate indifference to constitutional rights[;] or [3] facts [to]support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010) (quoting *Cottone*, 326 F.3d at 1360-61).

The Complaint does not allege a history of widespread abuse at the jail, or that Dr. Harrison personally participated in the alleged violation or directed Hale to act unlawfully. *See* doc. 29. Instead, Ms. Strickland bases her claims against Dr. Harrison and HMC on a purported policy that allowed Hale to make medical decisions that are beyond his training as a nurse, which allegedly caused a violation of her son's rights.[4] *See* docs. 29; 49. Even assuming that the alleged policy of allowing Hale to make decisions outside the scope of his license and training as a nurse without consulting Dr. Harrison could form the basis for a deliberate indifference claim, the claims against these defendants still fail. To begin, the

---

[4] More specifically, the Third Amended Complaint alleges as follows:

> [] Hale did not call [Dr.] Harrison [to consult about Mr. Strickland's condition] pursuant to a policy and custom of [Dr.] Harrison, HMC, and HCACC/CRMC.
>
> [] Due to the limited hours [Dr.] Harrison spent at the jail, [] [Dr.] Harrison's limited availability after regular hours, through practice and routine, and through direct instruction by Harrison, [] [Dr.] Harrison and Hale . . . established a custom and policy that Hale would make diagnoses and medical decisions beyond his license and abilities.
>
> [] This policy and custom was deliberately indifferent to the obvious risk that Hale, due to lack of training and expertise, would fail to appreciate possible diagnoses that needed to be ruled out through appropriate evaluation and testing beyond nursing practice, including life-threatening risks to inmate health.
>
> [] As a result of this policy and custom, Hale was the final policymaker for medical care decisions at the jail, and he functioned as a final policy maker regarding [Mr. Strickland's] lack of medical care.
>
> [] Hale managed the medical care [at the jail] on a daily basis with minimal physician oversight and regularly acted beyond the scope of his duties.

Doc. 29 at 5-6.

11

allegations regarding the existence of the policy are merely conclusory statements of an element of the § 1983 claims, and the court does not have to accept them as true. *See Iqbal*, 556 U.S. at 678. In addition, the factual allegations regarding these defendants' response to a single inmate's condition are not sufficient to show the existence of a policy. One incident does not show that Dr. Harrison and HMC "had actual or constructive notice of a flagrant, persistent pattern of violations." *Goebert*, 510 F.3d at 1332 (citations omitted). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (finding proof of a single incident of unconstitutional activity is not sufficient to show the existence of an unconstitutional municipal policy). Thus, the Complaint does not sufficiently allege the existence of a custom or policy that resulted in a violation of Mr. Strickland's rights.

Ms. Strickland attempts to avoid that conclusion as to HMC by arguing that Hale was a final policymaker for HMC regarding medical care at the jail. Doc. 49 at 12. But, the allegation is conclusory, *see* doc. 29 at 6, and not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 678. And, the allegation that Hale is a final policy maker is belied by the allegations that "[p]er contract . . . [Dr.] Harrison, the nominal medical director at the jail, should have been the person making any diagnoses and making the determination regarding further evaluation and treatment" and that Hale called Dr. Harrison and obtained his authorization to send Mr.

Strickland to the hospital. Doc. 29 at 6, 8. As a result, the Complaint does not plausibly allege that Hale was a final policymaker for HMC.

In summary, the Complaint does not plausibly allege a basis to hold Dr. Harrison or HMC liable under § 1983 for deliberate indifference. The facts alleged do not show the existence of policy or custom that resulted in a violation of Mr. Strickland's rights or show that Hale was a final policy maker for HMC. Consequently, the § 1983 claims against Dr. Harrison and HMC are due to be dismissed.

### B. Whether Ms. Strickland Pleads a Plausible Medical Malpractice Claim Against Dr. Harrison

Next, Dr. Harrison argues that Ms. Strickland fails to plead a plausible medical malpractice claim against him based on the heightened pleading standard required under the Alabama Medical Liability Act ("AMLA"). Doc. 47 at 11-13. The AMLA requires a plaintiff asserting a breach of the standard of care based claim to allege "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." Ala. Code 1975 § 6-5-551. General allegations of inadequate medical care or conclusory allegations that a provider's treatment violates the standard of care are insufficient. *See Murray v. Prison Health Services, Inc.*, 112 So. 3d 1103, 1107 (Ala. Civ. App. 2012).

13

Here, the Complaint does not allege that Dr. Harrison had any interaction with Mr. Strickland or any knowledge of his symptoms before Hale called Dr. Harrison after Mr. Strickland's condition had deteriorated. Doc. 29. Moreover, when briefed, Dr. Harrison authorized Hale to send Mr. Strickland to the hospital. *Id.* at 8. Nevertheless, Ms. Strickland contends that her allegation that Dr. Harrison allowed Hale to act beyond the scope of his license as a nurse is sufficient to support a medical malpractice claim against Dr. Harrison. Doc. 49 at 9. *See also* doc. 29 at 6. But, the Complaint does not allege that Dr. Harrison had any knowledge of Hale's treatment of Mr. Strickland before Hale's call. *See* doc. 29. And, the Complaint does not allege any other facts regarding when or how Dr. Harrison allowed Hale to act beyond the scope of his license. *See id.* Thus, Ms. Strickland does not allege any specific act of malpractice, much less any details regarding an alleged act, to plead plausible medical malpractice claim against Dr. Harrison. Therefore, the claim is due to be dismissed.

## C. <u>**Whether the Complaint is an Impermissible Shotgun Pleading**</u>

Finally, Hale and HMC argue that the Complaint is an impermissible shotgun pleading. Docs. 34 at 14-19; 47 at 13-14. Shotgun pleadings include "complaint[s] containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before," complaints "replete with conclusory, vague, and immaterial facts not obviously connected to

14

any particular cause of action," and complaints that do not separate each claim for relief into a different count. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (citations omitted). Such a pleading requires the defendants and trial court to sift out irrelevant facts, "a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). None of these traits are present here.

The defendants are correct that Counts I and II adopt and incorporate the preceding paragraphs of the complaint. However, the incorporated facts are relevant to Count I's deliberate indifference claims, and the majority of the facts are relevant to Count II's medical malpractice claims. *See* doc. 29. Moreover, it is not difficult for the defendants to determine which of the factual allegations give rise to which claims for relief. *See id.* Indeed, neither Hale nor HMC explicitly contend that they cannot discern the claims against them or prepare a responsive pleading. *See* docs. 34; 37; 47; 50. To the contrary, their arguments in their respective motions indicate that they are not confused about what claims Ms. Strickland asserts against them or the basis of the claims. Thus, the Complaint adequately puts Hale and HMC on notice of the specific claims against them and the factual allegations that support

those claims. As a result, because the two counts at issue "are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted," *Weiland*, 702 F.3d at 1326, the court declines to dismiss the Complaint.

## IV.  CONCLUSION AND ORDER

For the reasons discussed above, Hale's motion to dismiss, doc. 34, is **DENIED**. Dr. Harrison and HMC's motion to dismiss, doc. 47, is **GRANTED** as to the § 1983 claim (Count I) against Dr. Harrison and HMC, and the medical malpractice claim (Count II) against Dr. Harrison, and these claims are **DISMISSED WITHOUT PREJUDICE**. Finally, the motion to stay, doc. 52, is **DENIED** as **MOOT**.

**DONE** the 9th day of January, 2020.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE